IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MARIA NAVARRO,<br>　　　*Plaintiff*<br><br>-vs-<br><br>NEW LEAF HOMES, LLC, CENTER POINT REALTY COMPANY, FRED GHAVIDEL,<br>　　　*Defendants* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | SA-23-CV-00292-XR<br><br>*Consolidated with:*<br>SA-23-CV-00293-XR<br>SA-23-CV-00477-XR |

## ORDER ON REPORT AND RECOMMENDATION

On this date the Court considered United States Magistrate Judge Elizabeth S. Chestney's Report and Recommendation, filed September 3, 2025, (ECF No. 86) recommending that the Court deny the parties' cross-motions for summary judgment addressing Plaintiffs' breach-of contract and wage-and-hour claims against Defendant New Leaf Homes, LLC in these consolidated cases, and New Leaf's objections thereto (ECF No. 88). After careful consideration, the Court issues the following order.

## BACKGROUND

### I.    Factual Background[1]

Plaintiffs Maria Navarro, Howard Rhoder, and Donald Brown each filed a separate cause of action in state court against their former employer, Defendant NewLeaf Homes, LLC ("New Leaf"), a builder and residential community developer, and its owner, Fred Ghavidel ("Ghavidel"). Navarro's suit also names a third defendant, Center Point Realty Company ("Center Point"). All three Plaintiffs were sales agents assigned to sell, monitor, and service new home sales in an assigned New Leaf community subdivision.

---

[1] The following facts are undisputed unless otherwise noted.

1

All three Plaintiffs worked as sales agents for New Leaf for a period of years until March and April 2021, when they—and two non-party sales agents—were laid off, allegedly due to a change in the market from the COVID-19 pandemic and a need for a reduction in force. Plaintiffs received severance payments but were not required to execute releases. Plaintiffs assert that New Leaf (and the other Defendants) misclassified them as independent contractors, failed to pay them earned commissions in violation of their contract, and discriminated against them based on various protected characteristics.

It is undisputed that there are a significant number of real estate transactions for which Plaintiffs never received commissions because the transaction closed after their termination. Defendants created and produced a spreadsheet in discovery, identifying "yellow" properties for which each Plaintiff procured the buyer and executed the purchase agreement and the same buyer ultimately closed on the property. Plaintiffs further assert that there are properties for which they were paid a commission but the commission was underpaid.

The parties executed several agreements during their employment relationship, and these agreements bear on whether New Leaf lawfully withheld commissions from the Plaintiffs.

All three Plaintiffs signed an identical Independent Contractor Agreement ("New Leaf ICA") with New Leaf in late 2016 or early 2017. *See, e.g.*, ECF No. 65-1. The New Leaf ICA provides that as a salesperson for NewLeaf, Plaintiffs are employed to "sell, monitor and service each new home sale through closing" and that these responsibilities were to cover the assigned model homes in NewLeaf developments and subdivisions from 12 p.m. to 6 p.m. every day, for seven days a week. In return, New Leaf agreed to pay Plaintiffs a commission based on the "base sales price" of the home: 2.75% if the purchaser did not have a representative agent. Plaintiffs did

not receive any hourly wages for the work they performed or other compensation aside from their earned commissions.

The Agreement set forth certain criteria that must be accomplished regarding each sale to entitle the sales agent to an earned commission, to be paid upon closing in accordance with New Leaf's regular payroll practices.[2] The New Leaf ICA further provides that, while New Leaf retained the right to change its policies for paying commissions at its sole discretion, "[s]uch amendments or modifications [would] be effective if set forth in writing, signed by the President of NewLeaf Homes, and distributed to Sales" and would not apply retroactively to a purchase contract signed by a buyer before the effective date of such a change. *See* ECF No. 65-1 at 3. Still, it appears that New Leaf reduced the commission percentage at least twice during Plaintiffs' tenure—once to 2% by oral agreement and, again to 1%, just before Plaintiffs were terminated. Ghavidel acknowledged that he was unable to find any documentation of this change in writing. ECF No. 65-7, Ghavidel Dep. at 45:25–46:10, 157:14–20.

---

[2] The New Leaf ICA sets forth the following criteria earning a commission on a sale:

> [T]he sale must be initiated by the Salesperson or salesperson's partner when working in multi-salesperson communities in which commissions are shared.
>
> A contract between NewLeaf and the purchaser(s) must be obtained and the purchase agreement form must be ratified by an authorized officer of NewLeaf Homes.
>
> An earnest money deposit in an amount and form acceptable to NewLeaf Homes must be obtained at the time the purchase agreement is executed by the purchaser(s).
>
> The salesperson must conduct all required communications with the: purchaser(s), construction department, lender, realtor(s), NewLeaf Homes personnel, and any other applicable person and/or entity in an appropriate and effective manner so as to coordinate the efforts of all in accomplishing a timely and successful closing on the sale.
>
> The salesperson must assist in ensuring completion of all required contract documentation.
>
> The actions and conduct of the salesperson must be consistent with the policies and procedures of NewLeaf Homes.

*See* ECF No. 65-1 at 2.

The New Leaf ICA defines the parties' employment as "at will" and provides that Plaintiffs' employment "may be terminated by the Salesperson or NewLeaf Homes at any time, with or without cause." ECF No. 65-1 at 1. The Agreement also contains a clause entitled "Separation of Employment," which provides:

> If salesperson is terminated or leaves his or her relationship with NewLeaf Homes, the Company has the right to withhold all unpaid Commissions. Cause shall mean but not limited to: (a) any fact of fraud, intentional misrepresentation embezzlement or misappropriation or conversion of the assets or business opportunities of the Company, (b) conviction of the Employee of a felony, or (c) the Employee's willful refusal to substantially perform assigned duties.

*Id.* at 3.

NewLeaf has not asserted that Plaintiffs were terminated for any of these three enumerated causes. All three Plaintiffs allege that NewLeaf breached the Independent Contractor Agreement by failing to pay them their earned commissions under the governing contract.

In April 2017, Navarro and Rhoder also signed an Independent Contractor Agreement with Center Point Realty, a real estate company founded and managed by Ghavidel to bring sales activity "in house."[3] *See* ECF No. 65-2 (the "Center Point ICA"). Although Center Point and New Leaf were separate and distinct entities, Ghavidel supervised Navarro and Rhoder in both roles. As brokers with Center Point, Navarro and Rhoder could sell homes outside of New Leaf developments and subdivisions, although they earned lower commissions on outside sales. Upon the sale of a New Leaf home, New Leaf paid Center Point, which then distributed the commissions.

The Center Point ICA also contains a termination provision:

> If an agent is terminated or leaves his or her relationship with Center Point Realty. Company has the right to withhold all unpaid commission. It will be at the discretion of Center [P]oint on any outside listings at the time of his or her leaving.

---

[3] Brown did not sign the Center Point ICA because it required all licensed real estate agents working for NewLeaf to have their license with Center Point Realty, and Brown did not have a real estate license. See ECF No. 65-4, Brown Dep. at 43:16–44:16.

4

ECF No. 65-2 at 1. Navarro alone alleges that Center Point breached this agreement by underpaying commissions earned and paid prior to her termination.

## II. Procedural History

Navarro, Rhoder, and Brown filed separate actions in state court against Defendants, which were then removed based on federal question jurisdiction. *See Navarro v. New Leaf Homes, LLC et al.*, No. 5:23-cv-292-XR [hereinafter, the "*Navarro* Action"]; *Rhoder v. New Leaf Homes, LLC et al.*, No. 5:23-cv-293-XR [hereinafter, the "*Rhoder* Action"]; *Brown v. New Leaf Homes, LLC et al.*, No. 5:23-cv-477-XR [hereinafter, the "*Brown* Action"]. Plaintiffs assert claims for breach of contract, violations of the Fair Labor Standards Act ("FLSA"), and discrimination under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Texas Labor Code.[4]

This Court consolidated the cases in August 2024, and later referred the consolidated cases to the Magistrate Judge for all pretrial matters pursuant to Western District of Texas Local Rule CV-72 and Appendix C. ECF No. 73. Following consolidation, the parties filed ten cross-motions for summary judgment. Each Plaintiff moved separately for partial summary judgment on his or her breach-of-contract claims. *See Navarro* Action, ECF No. 74; *Rhoder* Action, ECF No. 53; *Brown* Action, ECF No. 44. Defendants moved for summary judgment in full in all the three cases. *See Navarro* Action, ECF No. 65 (New Leaf); ECF No. 67 (Center Point); ECF No. 62 (Ghavidel); *Rhoder* Action, ECF No. 51 (New Leaf); ECF No. 48 (Ghavidel); *Brown* Action, ECF No. 42 (New Leaf); ECF No. 40 (Ghavidel).

At a status conference in April 2025, the Magistrate Judge announced her intention to take up the dispositive motions concerning Plaintiffs' claims against New Leaf other than their claims

---

[4] Plaintiffs have abandoned their previously-asserted claims for quantum meruit, promissory estoppel, unjust enrichment, fraud, money had and received, theft of services, willful filing of fraudulent tax forms in violation of 26 U.S.C. § 7434, and violation of the Texas Payday Law. *See* ECF No. 87.

5

of discrimination (given the individualized nature of such allegations). Based on this phased approach, Defendants filed a consolidated response (ECF No, 79) to Plaintiffs' motions for partial summary judgment, to which Plaintiffs filed a consolidated reply (ECF No. 82). Plaintiffs likewise filed their consolidated response to New Leaf's three motions for summary judgment (ECF No. 80), to which NewLeaf filed a consolidated reply (ECF No. 81).

### III.     The Magistrate's Report and Recommendation

The Magistrate Judge issued a Report and Recommendation address Plaintiffs' claims against New Leaf on September 3, 2025.

#### A.     Plaintiffs' Breach-of-Contract Claims

The parties agree that Texas law governs Plaintiffs' breach-of-contract claims and that there is a valid and binding contract governing their employment relationship. They dispute, however, (1) whether Plaintiffs tendered all performance required to entitle them to the withheld commissions, and (2) whether New Leaf breached the ICA by failing to pay Plaintiffs' commissions after their termination.

To begin, the Magistrate Judge recommended that the Court deny Plaintiffs' motions for summary judgment on their breach-of-contract claims against New Leaf because the record failed to establish is a matter of law that they had fully performed under the New Leaf ICA. ECF No. 86 at 12–18. The Magistrate Judge further held that Plaintiffs were not entitled to the unpaid commissions under Texas's "procuring cause doctrine"—a default rule crediting a broker or salesperson "for a commission-generating sale" who produces a purchaser "ready, able and willing to buy the property upon the contract terms"—because the commission provisions in the New Leaf ICA evinced a clear intent to contract around the default rule. *Id.* at 19–26 (citing *Perthuis v. Baylor*

*Miraca Genetics Lab'ys, LLC*, 645 S.W.3d 228, 234 (Tex. 2022) and *Catalyst Strategic Advisors, L.L.C. v. Three Diamond Cap. Sbc, L.L.C.*, 93 F.4th 870, 876 (5th Cir. 2024)).[5]

Next, the Magistrate Judge recommended that the Court deny New Leaf's motions for summary judgment on Plaintiffs' breach-of-contract claims based on an ambiguity in the ICA's "Separation of Employment" provision, which contains only two sentences. The first sentence states that NewLeaf "has the right to withhold all unpaid Commissions" if a salesperson is terminated or voluntarily separates his or her employment. ECF No. 65-1 at 3. The second sentence defines "cause" and states that "cause" means "but is not limited to" three bad acts that might be taken by the employee. *Id.*

The term "cause" appears in only one other section of the contract, the section addressing the parties' at-will employment relationship. ECF No. 65-1 at 1 ("Salesperson understands and acknowledges that his or her relationship with NewLeaf Homes is 'at will' and may be terminated by [either party] at any time, with or without cause."). But the *definition* of "cause" is only included once in the contract—in the "Separation of Employment" section. *Id.* at 3. This section of the contract addresses only one thing: the effect of separation of employment on the receipt of commissions.

New Leaf asks the Court to construe the "Separation of Employment" provision as affording it with unfettered discretion to withhold commissions after termination or separation for *any* reason. Although the first sentence regarding the withholding of commissions does not reference the word "cause" at all, the Magistrate Judge, applying several canons of construction, declined to adopt New Leaf's interpretation.

---

[5] Given that Plaintiffs have not objected to this recommendation, the Court need not elaborate on the Magistrate Judge's analysis of their performance under the New Leaf ICA.

First, the "scope-of-subparts" canon counsels that material within an indented subpart of a contract relates *only* to that subpart, whereas material contained in an un-indented portion of text relates to all the following or preceding indented subparts. ECF No. 86 at 23–24 (citing *Matter of Pirani*, 824 F.3d 483, 495 (5th Cir. 2016)); *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 634 (Tex. 2018) ("Material within an indented subpart relates only to that subpart.") (citing Antonin Scalia and Bryan A. Garner, Reading Law 156 (2012)). That NewLeaf included a reference to "cause" and not "without cause" in the section of the contract addressing post-termination commissions supports Plaintiffs' reading of the contract as limiting the right to withhold commissions only to terminations for misconduct, including but not limited to the examples provided in the contract.

Second, the Court "must examine the entire writing and will endeavor to harmonize and give effect to all the provisions so that none are rendered meaningless." *Exxon Mobil Corp. v. Ins. Co. of State*, 568 S.W.3d 650, 657 (Tex. 2019); *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998) (courts must strive to give meaning to every clause of contract "to avoid rendering any portion inoperative"). New Leaf's interpretation—that the ICA expressly permits commissions to be withheld upon termination of the employment relationship for any reason—would render the inclusion of the definition of "cause" in that section completely meaningless.

Thus, the Magistrate Judge concluded that, "[t]o harmonize the contract and give effect to all provisions, the Court must give some significance to NewLeaf's decision to include a definition of 'cause' *only* in the section of the contract addressing the withholding of commissions following termination." ECF No. 86 at 24. She added that "[t]his reading is supported by the contrasting language in the termination provision drafted by Center Point." ECF No. 65-2 at 1 ("If an agent is terminated or leaves his or her relationship with Center Point Realty, the Company has the right to

withhold all unpaid commission. It will be at the discretion of Center [P]oint on any outside listings at the time of his or her leaving.").[6]

In short, the Magistrate Judge concluded that the New Leaf ICA is not clear as to the relationship between the "cause" definition included in the "Separation of Employment" provision of the contract and the ability to withhold commissions. But "[i]t is well-established law that where an ambiguity exists in a contract, the contract language will be construed strictly against the party who drafted it since the drafter is responsible for the language used." *Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 737 (Tex. 1990). Accordingly, the Magistrate Judge recommended that the Court deny New Leaf's motion for summary judgment on Plaintiffs' contract claims because it has not established as a matter of law that it did not breach the contract by withholding commissions from Plaintiffs after their termination. ECF No. 86 at 26.

B.  **Plaintiffs' FLSA Claims**

Finally, the Magistrate Judge recommended that the Court deny summary judgment on Plaintiffs' FLSA claims because New Leaf failed to establish that Plaintiffs were subject to the "outside sales exemption" from the FLSA's wage and hour requirements. An "employee employed in the capacity of outside salesman" is an employee (1) whose primary duty is making sales and (2) who is customarily and regularly engaged away from the employer's place(s) of business in performing such primary duty. 29 C.F.R. § 541.500(a)(1)–(2).

Plaintiffs do not dispute that their primary duty involved making sales, but they maintain that they were not customarily and regularly engaged outside of the employer's place or places of business in performing their primary duty. In reply, NewLeaf asserted that Plaintiffs worked from

---

[6] "While extrinsic evidence of the parties' intent is not admissible to create an ambiguity, the contract may be read in light of the surrounding circumstances to determine whether an ambiguity exists." *Autobond Acceptance Corp. v. Progressive N. Ins. Co.*, 76 S.W.3d 489, 493 (Tex. App.—Houston [14th Dist.] 2002).

temporary offices in the model homes they were marketing on New Leaf's behalf and that their office work was centered on developing and/or coordinating sales. *See* ECF No. 81 at 8–9.

Acknowledging that "real estate salespeople generally meet the text" for the exemption,[7] the Magistrate Judge found that New Leaf had failed to satisfy its burden on summary judgment:

> Although it is certainly possible (if not likely) that the evidence will show that Plaintiffs spent consistent time on activities outside of NewLeaf's office critical to the sales process, again NewLeaf has not directed the Court to any evidence whatsoever regarding the "outside" requirement of the outside-salesperson exemption. It is also plausible that Plaintiffs could testify at trial that they performed their jobs in a manner that did not involve being customarily or regularly away from the office. . . .
>
> Again, NewLeaf bears the burden to establish the application of the outside-salesperson exemption, which requires it to identify evidence in the summary-judgment record on both components of the exemption. As it failed to do so, the Court should not award it summary judgment on its affirmative defense.

ECF No. 86 at 31 (citations omitted).

## DISCUSSION

### I.   Legal Standard

A party may serve and file objections to a Report and Recommendations within fourteen days. FED. R. CIV. P. 72(a), (b)(2). "Parties filing objections must specifically identify those findings objected to. Frivolous, conclusive [sic] or general objections need not be considered by the district court." *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982), *overruled on other grounds by Douglass v. United States Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

Courts must review *de novo* any of the Magistrate Judge's conclusions to which a party has specifically objected. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations

---

[7] *See Benson v. United InvestexUSA 10, LLC*, No. 3:19-CV-01161-E, 2021 WL 1056447, at *9 (N.D. Tex. Mar. 18, 2021) (citing DOL Wage and Hour Division Opinion Letter FLSA 2007-2, 2007 WL 506575, at *3 (Jan. 25, 2007)).

to which objection is made."). Any sections that were not clearly objected to are reviewed for clear error to determine whether they are contrary to law. *Id.*; *see also United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989), *cert. denied*, 492 U.S. 918 (1989).

## II. Analysis

### A. Plaintiffs' Motions for Summary Judgment on Breach-of-Contract Claims

Because Plaintiffs did not object to the Magistrate Judge's recommendation that the Court deny their motions, the Court need not conduct a *de novo* review. The Court has reviewed the Report and Recommendation and finds it to be neither clearly erroneous nor contrary to law. *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989).

Accordingly, the Court **ACCEPTS** the Magistrate Judge's recommendation that the Court **DENY** Plaintiffs' motions for summary judgment as to their breach-of-contract claims against New Leaf.

### B. Defendants' Motions for Summary Judgment

#### 1. Plaintiffs' Breach-of-Contract Claims

New Leaf objects to the Magistrate Judge's reading of the Separation of Employment clause. New Leaf insists that because the provision also contemplates *voluntary* separations—in addition to termination—its right to withhold commissions *cannot* be limited to cases in which the salesperson is terminated for cause. ECF No. 88 at 3–7. Here again, however, New Leaf's reading deprives the inclusion of the "cause" definition in the "Separation of Employment" of any meaning, and disregards that ambiguities must be strictly construed against the drafting party.

New Leaf's objections are overruled, and the Court **ACCEPTS** the Magistrate Judge's recommendation that the Court **DENY** New Leaf's motions for summary judgment on Plaintiffs' breach-of-contract claims.

### 2. Plaintiff's FLSA Claims

New Leaf objects to the Magistrate Judge's recommendation to deny summary judgment on Plaintiffs' FLSA claims, seeking to draw the Court's attention to record evidence establishing that Plaintiffs are subject to the outside sales exemption. *See* ECF No. 88 at 7–12; *id.* at 12 (incorporating by reference twelve exhibits attached to the objections totaling over 800 pages). New Leaf's attempts to direct the Court to the relevant portions of the record are untimely, however, and considering them here would prejudice Plaintiffs, who have not had an opportunity to address them. *Cf. Espinoza v. Pompeo*, No. SA-19-CV-01363-XR, 2020 WL 1941300, at *5 (W.D. Tex. Apr. 22, 2020) (noting that this Court does not consider arguments raised for the first time in a reply brief); *see also* ECF No. 86 at 29 ("It is not this Court's responsibility to cull through the over one thousand pages of deposition testimony to attempt to find testimony to support NewLeaf's assertions in its briefing.") Nor will the Court permit the parties to engage in iterative rounds of summary judgment briefing on the same issues *ad nauseum*.

New Leaf's objections are overruled, and the Court **ACCEPTS** the Magistrate Judge's recommendation that the Court **DENY** New Leaf's motions for summary judgment on Plaintiffs' FLSA claims.

## CONCLUSION

For the foregoing reasons, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation (ECF No. 86) and issues the following orders in the cases identified below.

*Navarro v. New Leaf et al.*, **No. 5:23-CV-292-XR**

Plaintiff Navarro's motion for partial summary judgment (ECF No. 74) is **DENIED** IN PART as to her claims against New Leaf and **SHALL REMAIN OPEN** pending the Court's resolution of Navarro's motion as to her claims against Center Point; and

Defendant New Leaf's motion for summary judgment (ECF No. 65) is **DENIED IN PART** as to Plaintiff's breach-of-contract and FLSA claims and **SHALL REMAIN OPEN** pending the Court's resolution of New Leaf's remaining arguments.

### *Rhoder v. New Leaf et al.*, **No. 5:23-CV-293-XR**

Plaintiff Rhoder's motion for partial summary judgment (ECF No. 53) is **DENIED** and **TERMINATED**; and

Defendant New Leaf's motion for summary judgment (ECF No. 51) is **DENIED IN PART** as to Plaintiff's breach-of-contract and FLSA claims and **SHALL REMAIN OPEN** pending the Court's resolution of New Leaf's remaining arguments.

### *Brown v. New Leaf et al.*, **No. 5:23-CV-477-XR**

Plaintiff Brown's motion for partial summary judgment (ECF No. 44) is **DENIED** and **TERMINATED**; and

Defendant New Leaf's motion for summary judgment (ECF No. 42) is **DENIED IN PART** as to Plaintiff's breach-of-contract and FLSA claims and **SHALL REMAIN OPEN** pending the Court's resolution of New Leaf's remaining arguments.

It is so **ORDERED**.

**SIGNED** this 23rd day of September, 2025.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE